Kimball *v.* Parker.

---

---

### GILMAN KIMBALL *vs.* SAMUEL PARKER.

A debtor, after all his lands were attached, conveyed a part of them to A. by deed with covenants of warranty and against incumbrances: The attaching creditor afterwards recovered judgment, and took out execution, and A. paid him a certain sum for a release of the attachment on the land thus conveyed, under an 'agreement that the creditor need not apply the money, thus paid to him, towards satisfaction of his judgment, because A. had no wish to raise a claim against his grantor, on the covenants in his deed, as such claim would be worthless: The creditor subsequently levied his execution on the other land that was attached, in part satisfaction of his judgment, and committed the debtor to prison, on a pluries execution taken out for the balance of the judgment: The debtor thereupon brought a writ of *audita querela* against the creditor, for relief, on the ground that the sum paid by A. had satisfied the judgment *pro tanto*. *Held*, that the sum paid by A. was not paid on account of the debtor, as it did not come, directly or indirectly, out of his funds; and that the writ of *audita querela* could not be maintained.

THIS was a writ of *audita querela*, in which the plaintiff complained, that a judgment was recovered against him, by the defendant, in this court, for $954·06, debt and costs; that the whole cause of action, and the benefits of the judgment to be recovered upon it, had been assigned, for a valuable consideration, to Jefferson Bancroft, before the rendition of the judgment; that before the execution issued, or before any service was made upon it, the sum of $500 was paid, in part satisfaction and discharge of the said judgment; that afterwards the execution was levied upon property of the plaintiff, to the amount, after

deducting expenses, of about $776; that, including the $500 before paid, this sum fully satisfied the execution, and a considerable sum over; and that the defendant, not admitting the payment of $500, took out an alias, pluries, and second pluries execution for the balance apparently due on the execution, and caused the plaintiff to be arrested and imprisoned thereon. This writ was sued out to obtain relief. Trial before *Shaw*, C. J., who made the following report thereof:

It was conceded that a suit was commenced by said Parker against said Kimball, in February 1836, and that an attachment of all Kimball's real estate was made thereon; that the suit was prosecuted to final judgment, and execution obtained thereon at the April term of this court in 1839; and that the execution was placed in the hands of an officer for service, within thirty days of the rendition of the judgment; that Parker assigned all his interest in said suit, whilst the same was pending, and in the judgment which might be recovered thereon, to Jefferson Bancroft, for a valuable consideration; that on the 29th of March 1836, Kimball, by a deed with covenants of general warranty and against incumbrances, conveyed to John Nesmith, in consideration of $3400, a lot of land on Merrimack Street, in Lowell, and that said Nesmith, on taking said deed, received from Seth Ames, who had a mortgage on said land, a written obligation, covenanting to indemnify Nesmith against the aforesaid attachment at the suit of Parker; that in August or September 1836, said Kimball made sale of another lot of land in said Merrimack Street, to Thomas Nesmith, by a deed with covenants like those in his said deed to John Nesmith; that the aforesaid judgment and execution were for $862 damages, and $92·06 costs; and that on the execution aforesaid, the same being placed in the hands of J. Butterfield, deputy sheriff, all the right in equity which said Kimball had, at the date of the attachment, in another lot of land in Lowell, was sold, in pursuance of law, to said Bancroft, at a price sufficient to produce the whole amount of the execution, except the sum of $178·06, said lot of land having been sold by said Kimball to Thomas Wentworth, in August 1836, with general warranty; that after said sale, the execution was several times renewed for the

balance aforesaid, and a fourth execution issued in October 1841, on which said Kimball was arrested, February 1st 1842, and committed to jail.

Jefferson Bancroft, called by the plaintiff, testified, that soon after judgment was recovered in the suit of Parker against Kimball, which had been assigned to him, an arrangement was made between Parker, the nominal plaintiff, Seth Ames, who had agreed to indemnify John Nesmith against the attachment in the suit, Thomas Nesmith, and the witness, by which, in consideration of $500 paid by said Ames and Thomas Nesmith, it was agreed that the execution should not be levied on the estates which had been conveyed to the two Nesmiths: That the witness did not know in what proportions they paid, but thought it was one half each: That Parker was present, and wished the arrangement made; and that this was after judgment recovered, but before execution issued: That the first execution was delivered by the witness to Butterfield for service; and that an equity of redemption was levied upon, and upwards of $700 received upon it: That the witness did not direct Kimball to be arrested, and that the arrest was against his wishes: That he informed the officer, who held the execution, that the judgment was his, that he did not wish Kimball arrested, and that if the officer collected any money upon it, he must account with the witness for it: That the officer told the witness that Samuel Wood claimed to have the right to direct the service of the execution.

On cross examination, this witness said, "Parker was indebted to me, at the time of the assignment, and I gave him a writing undertaking to account to him for the proceeds of the judgment, if any should be realized from it. I did not pay any money for the assignment, at the time. I think I brought a suit against Parker, and trusteed Kimball, and then Parker agreed to assign the debt to me; and he did. I do not consider that Wood has any claim on me to account for the proceeds. I consider that Parker owes me enough to absorb the whole of it. When the $500 was paid, I did understand that Ames and Nesmith were not to call on Kimball for indemnity. I cannot

speak confidently of both, but I do recollect that Ames said he did not expect to enforce the claim against Kimball; that he had already more claims against him than he ever expected to get. He said we might do what we pleased with the money; it was of no consequence to him to apply it so as to raise a claim against Kimball on his warranty. They both said that the amount paid by them need not be applied on the execution; that all they wanted was, that the land should be discharged from the attachment, and were willing that the whole of the execution should be levied on other property of Kimball, if they could find it. I proposed to Ames and Nesmith to take an assignment of the judgment, and pay the face of it; but they preferred paying what they did, for a release of the attachment; and Parker wished the arrangement so made. It was talked over at the time, whether we had a right to take the $500 of Ames and Nesmith, without applying it on the execution, and Ames said he thought we were not bound so to apply it. That was one motive with Parker to make the arrangement, because he thought he could obtain more on the execution. No receipt was given for the $500, but I gave an agreement not to levy on those two lots of land, and this was signed both by Parker and myself. The equity, which was afterwards sold on the execution, I bid off at $800. There were some expenses and fees to be deducted, and the sum of $776 was applied in satisfaction of the execution. I think I bid it off at $800, at Parker's request."

It was conceded that the orders to the officer, to arrest the plaintiff on execution, were given by Parker, the defendant, professing to act for Samuel Wood, to whom he had assigned the surplus of the judgment, if any, after satisfying Bancroft.

The parties agreed to take the foregoing evidence as a statement of facts, the court to draw all just inferences from it, and to render such judgment, on nonsuit or default, as the case should require.

*S. Ames,* for the plaintiff. The defendant has received money to which he had no claim, and the plaintiff's remedy, if any, is by *audita querela.* The defendant had attached real estate, which the plaintiff afterwards sold, in several parcels,

to different grantees, with covenants against incumbrances. It was then in the power of the defendant to demand payment of his whole execution, of each grantee. The payment, therefore which was made by two of the plaintiff's grantees, was not voluntary, but to relieve their land from execution. The plaintiff's covenant against incumbrances was broken, as soon it was made, and there was a paramount claim, to which those grantees might yield. *Norton* v. *Babcock*, 2 Met. 510. *Sprague* v. *Baker*, 17 Mass. 586. *Hamilton* v. *Cutts*, and *Prescott* v. *Trueman*, 4 Mass. 349, 627. The money paid by them went to relieve the plaintiff's estate from an incumbrance, and their parol declarations that they did not desire to recover back the money from the plaintiff, did not release him from his liability for breach of his covenant, and can have no effect on the question now before the court. The defendant can hold the money only as a payment of the execution. *Brackett* v. *Winslow*, 17 Mass. 153. *Luddington* v. *Peck*, 2 Connect. 700. *Hammatt* v. *Wyman*, 9 Mass. 138.

The plaintiff was committed on the execution, by order of the defendant, who was not the real judgment creditor, and against the wishes of the real creditor. For this wrong, *audita querela* seems to be the proper process against him.

*E. Fuller*, for the defendant. This case turns on the question, whether Ames and Nesmith are entitled to recover of the plaintiff the $500 paid by them to relieve the attachment. The case of *Bearce* v. *Jackson*, 4 Mass. 408, shows that an action on the covenant of warranty will not lie, except where there has been an ouster. They have, therefore, no claim on that covenant; nor have they any claim on the covenant against incumbrances. The payment by them was voluntary, and there was a good consideration for it, in the agreement that the levy should not be made on their lands. The lands which were attached were sufficient to satisfy the execution, but it has not been wholly satisfied.

The defendant, as he had an ulterior benefit to be derived from the execution, had a right, although he had assigned the judgment, to direct the plaintiff to be committed. And if he

had no such right, yet *audita querela* is not the plaintiff's remedy.

*Ames*, in reply. The payment made to the defendant by the plaintiff's grantees was not voluntary. *Boston & Sandwich Glass Co.* v. *City of Boston*, 4 Met. 181. The payment made by one of them was as surety of the plaintiff; that is, to fulfil the plaintiff's covenant against incumbrances.

SHAW, C. J. The court are of opinion, upon the facts agreed, that the payment of money by Ames and Nesmith was not made in part satisfaction of the execution; that the execution was not thereby in any part satisfied and discharged; and therefore that this action cannot be maintained. The ground on which Ames and Nesmith were liable was, that they held estate liable to the attachment of the judgment; and though they had a remedy over against Kimball, on their covenants, yet they were not limited to that remedy. Had they waited till the creditor had levied his execution, they might have paid the debt and redeemed the land; but in this case it is obvious, that the debt would have been satisfied by the levy, and the execution no longer in force. So, we think, when it was obvious that their land was inevitably liable to be levied upon, if, to avoid the levy, they had paid the debt, in whole or in part, that would have been such a payment upon compulsion, as would give them a remedy over upon their grantor's covenant against incumbrances. *Preston* v. *City of Boston*, 12 Pick. 7. *Boston & Sandwich Glass Co.* v. *City of Boston*, 4 Met. 181. But it would be *primâ facie* a payment of his debt, in whole or in part, and he being liable over to them on his covenant for the amount paid to extinguish an incumbrance against which he had stipulated to indemnify them, it would be in effect a payment out of his funds, and must enure to his benefit. In that case, it would be held to be paid on account of the execution, and in part satisfaction of the judgment; and this, whether indorsed on the execution, or expressly stated to be in satisfaction, or not.

But we think this is a presumption of fact, which may be rebutted by proof. And therefore if, at the time of the pay-

ment by third persons, not parties to the judgment, nor directly liable for its payment, it is agreed that the sum thus paid shall not be deemed part payment of the judgment, and shall not be regarded as giving them a claim upon their covenants, it rebuts the presumption that money so paid was intended to satisfy the execution, and leaves the creditor at liberty to enforce his execution, as if no such sum had been paid. It is not paid for account of the judgment debtor, and does not come, directly or indirectly, out of his funds. These considerations distinguish this case from those of *Hammatt* v. *Wyman*, 9 Mass. 138, and *Brackett* v. *Winslow*, 17 Mass. 153. In both those cases, the execution had been actually satisfied by one of the joint debtors, and the attempt was to enforce it, after the creditors had been paid, for the use of one of the debtors. Here, those who paid the money were strangers to the judgment, did not profess to pay it in part satisfaction, but, on the contrary, agreed that it should not be so regarded, either for the purpose of discharging the execution, or of charging the judgment debtor on his covenants against incumbrances.

This decision renders it unnecessary to consider the other question arising on the report, namely, whether, if the plaintiff was entitled to this process, it was rightly commenced against Parker, the original judgment creditor, under the particular circumstances stated

*Plaintiff nonsuit.*